# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**DORA L. BONNER**

**Plaintiff,**

**v.**

**TRIPLE S MANAGEMENT CORPORATION & TRIPLE S VIDA INC.,**

**Defendants.**

Civil No. 19-1228 (GAG)

## OPINION AND ORDER

On March 13, 2019, Dora L. Bonner ("Bonner" or "Plaintiff") filed the above-captioned action against insurance companies Triple-S Management Corporation ("Triple-S Management") and Triple-S Vida Inc. ("Vida"), collectively Defendants, alleging they incurred in civil violations, under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, fraud, breach of contract and fiduciary duty, under Texas state law. (Docket Nos. 5; 17). Plaintiff seeks treble damages and damages for the remaining claims. Id.

Defendants move to dismiss Bonner's claims arguing that she fails to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). (Docket Nos. 12; 18). Specifically, Defendants contend that: (1) its companies and subsidiaries have never entered in a contractual, or otherwise, relationship with Plaintiff; (2) Bonner's civil RICO claims fail to meet the express distinctness requirement, and (3) Plaintiff's complaint ignores that enterprises cannot be held liable under 18 U.S.C. §1962(c). Id.

After reviewing the parties' submissions, record and applicable law, this Court **DENIES** Defendants' motions to dismiss for failure to state a claim at Docket Nos. 12 and 18.

**Civil No. 19-1228 (GAG)**

**I. Relevant Factual and Procedural Background**

For purposes of this motion to dismiss, the Court accepts as true all the factual allegations in the Complaint and construes all reasonable inferences in favor of Plaintiff. See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998).

a. The Alleged Fraud Scheme

On March 11, 2015, Bonner received a call, originating in Costa Rica, from Albert Gamboa Spencer, who identified himself as a Vida employee that had previously worked at Atlantic Southern Insurance (ASI), a company Plaintiff had been trying to contact for months. (Docket No. 17 ¶¶ 8-10). Spencer told Bonner that someone had attempted to change the beneficiary on her investment certificates held by Vida. Id. Plaintiff alleges, Spencer explained to her that Vida had originally been purchased by Triple-S Management, on or about 2013, and later relocated the company to its wholly owned subsidiary, after it went through a name change to Vida. Id. ¶ 9. Following this initial conversation, Spencer promised Plaintiff to call back the next day with an investigator present who would assist and advise her on how to proceed with the investments. Id. ¶ 12.

Between March 11, 2015 and until about September 1, 2015, Bonner engaged in phone conversations, originating from Costa Rica, Nicaragua and the Commonwealth of Puerto Rico, with several individuals that purportedly worked for Triple-S Management and were going to assist with her investment situation. Id. ¶ 13. These individuals also exchanged emails and documents with Bonner bearing Triple-S Management's name and supposed email address. Id. These individuals allegedly included: (1) Albert Gamboa Spencer, an attorney for Vida; (2) Feliciano Zelaya, a Triple-S Financial Manager; (3) Ramon Ruiz Comas, Triple-S Management's CEO; (4) Eugenio Cerra, Jr., Triple-S Management's chairman, and (5) Emilio

**Civil No. 19-1228 (GAG)**

Aponte, a member Triple-S Management board of directors who worked at Puerto Rico's Treasury Department. (Docket No. 17 ¶¶ 17; 19).

Plaintiff's allegations lay out a detailed explanation of the alleged fraud scheme committed against her. Id. ¶¶ 15-81. In general terms, Bonner was asked to pay thousands of dollars in transfer fees to wire transfer to her bank account a judgment award. She alleges having paid the fees, but never received the money judgment. During Plaintiff's exchanges with these individuals, Bonner was told not to talk to representatives from her bank, that the initial management fees invested were intercepted by the Federal Bureau of Investigation (FBI) and that the FBI had requested Triple-S Management to turn over the certificates. Id. ¶¶ 42; 45; 47.

Plaintiff also allegedly engaged directly with an FBI agent who advised her that the funds had not been intercepted but were rather blocked from being deposited on her account. Id. ¶ 48. After the initial amount of money, $10,000, was sent to the individuals, a new "strategy" was developed to help Bonner recover her investments, Id. ¶¶ 50-51; 53-54, sending more money for management fees, including requesting a quick loan, or otherwise the funds would be turned over to the FBI. Id. ¶¶ 54; 56-59. At this point, Plaintiff opposed, stating that sending additional money was not an option and eventually filed suit in Texas state court against Triple-S Management for breach of contract. Id. ¶ 58.

To support these allegations, Bonner posits that she received over fifty phone calls and one-hundred fifty emails from these individuals -representing Defendants- to execute several schemes to defraud her. Id. ¶ 60. Plaintiff's complaint includes as exhibits, nineteen of the most relevant email conversations to her claims, which show the receipts of disbursement contracts copies concerning the certificates Triple-S Management allegedly possessed, written agreements between Bonner and Triple-S Management, wiring instructions, and copies of

**Civil No. 19-1228 (GAG)**

payments actually sent to Triple-S Management and her compliance with those requests. (Docket No. 17 ¶¶ 61-81).

In sum, Bonner posits that these conversations demonstrate that Triple-S Management, through and in association with its employees and agents, collected unlawful debts in furtherance of the scheme to defraud her. Id. ¶ 61.

      b.   The Texas case

In the Texas case proceedings, Bonner sued Triple-S Management for breach of contract, alleging it had promised to transfer certain funds to her account and failed to do so. See Bonner v. Triple-S Mgmt. Corp., 181 F. Supp. 3d 371 (S.D. Tex. 2016).[1]

Triple-S Management, the sole defendant in that case, moved to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2). Id. After an evidentiary hearing, the District Court dismissed and held that "Bonner has failed to demonstrate that Triple-S [Management] has sufficient contacts to support the exercise of specific jurisdiction." Id. at 375. Plaintiff appealed and the Fifth Circuit affirmed the lower court's decision. See Bonner v. Triple-S Mgmt. Corp., 661 F. App'bx 820 (5th Cir. 2016). The Court of Appeals for the Fifth Circuit affirmed the District Court's determination stating: "we don't doubt that Bonner was defrauded, the evidence unfortunately reveals that Bonner was not in contact with the actual Defendant in this case." Id. at 823 (citations and internal quotation marks omitted). Noteworthy, the Fifth Circuit stated that "[t]he facts alleged by Bonner suggest that she was the victim of a 4-1-9 scam, where scammers, posing as agents of a known entity, offer the victim a large sum of money in exchange for a smaller transaction fee." Id. at 821, n. 2.

---

[1] Plaintiff originally filed suit at the Texas state court and was later removed to federal district court. Id.

4

II. **Standard of Review**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(6), the Court analyzes the complaint in a two-step process under the context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz, 669 F.3d 50 at 55. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the Court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55.

Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has

Civil No. 19-1228 (GAG)

facial plausibility." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### III. Discussion

Defendants primarily posit that they have never entered into a contractual relationship with Bonner. (Docket No. 12 at 8-9). To support this claim, Triple-S Management and Vida put forward their own statement of facts. Id. at 4-8. These factual allegations are partially based on an affidavit filed during the Texas case proceedings by Triple-S Management's then legal counsel Gilberto R. Negrón Rivera. Id. at 5. He declared that: (1) Neither Triple-S Management, Vida, nor any another Triple-S Management's subsidiary invests assets on behalf of individuals and (2) ASI, similarly, does not offer financial services to individuals seeking to invest large sums of money. Id. Based on these assertions, Defendants argue that it does "not offer the products or services that Bonner claims were the object of her agreement with [Triple-S Management] [and thus] it is impossible for Defendants to be parties to the referenced agreements and letters." Id.

Likewise, Defendants allege that, pursuant to a World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center's Administrative Panel Decision, the domain name used to contact Bonner is not a valid Triple-S Management or Vida e-mail address and was not owned by Triple-S Management during the relevant period. Id. at 5-7. Finally, Defendants posit that except for former Triple-S Management President and CEO Ramon Ruiz Comas, the individuals Bonner names in her Complaint are not and have never been Triple-S Management or Vida employees. (Docket No. 12 at 7-8). Specifically, Ruiz Comas stated in an affidavit during the Texas case proceedings that he had never met or spoken, either by telephone, in person or written communication, with anyone named Dora Bonner. Id.

6

After amending the Complaint, Plaintiff opposed this argument stating that Defendants attempt to set up impermissible affirmative defenses. (Docket No. 19 ¶ 8). Relying on PPV Connection, Inc. v. Rodriguez, et al., 607 F. Supp. 2d 301 (1st Cir. 2009), Bonner posits that Defendants fail to point out pleading deficiencies in the Complaint. (Docket No. 19 ¶¶ 9-10). She further avers that this Court should disregard the Texas district court's decision because it only found that it lacked in *personam* jurisdiction over defendant Triple-S Management. Id. ¶¶ 11-14. As to the WIPO's decision, Bonner contends that she was not a party to the decision and is not bound by the findings of a world organization who has no personal jurisdiction over her or the person who was defaulted in the ruling. Id. ¶¶ 17-19.

Defendants filed a supplemental motion to dismiss (Docket No. 18) and replied thereafter to Plaintiff's opposition (Docket No. 20). Bonner replied to Defendants' supplemental motion to dismiss. (Docket No. 21). In all these motions, the parties reiterated their position as to this issue.

The Court agrees with Plaintiff's position and finds that Bonner is entitled to discovery in order to adequately respond Defendants' proposed statement of facts and exhibits in support thereof.

It is well-established that affirmative defenses may be raised in a motion to dismiss for failure to state a claim. See Keene Lumber Co. v. Leventhal, 165 F.2d 815, 820 (1st Cir. 1948); see also LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). However, "it is equally well settled that, for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear 'on the face of the plaintiff's pleadings.'" Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001) (citing Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989)). Moreover, when reviewing the

**Civil No. 19-1228 (GAG)**

complaint, along with any other documents properly considered under FED. R. CIV. P. 12(b)(6), it must "leave no doubt" that plaintiff's action is barred by the asserted defense. LaChapelle, 142 F.3d at 508.

On the face of the Complaint, Plaintiff has established a plausible set of facts that show a more than possible scenario where Defendants, in association with the alleged racketeers named in the Complaint, incurred in RICO civil violations, fraud, breach of contract and fiduciary duty. In other words, Bonner narrates a plausible claim for relief and there is a reasonable expectation that discovery may reveal evidence of the necessary elements to prove her allegations. Twombly, 550 U.S. at 556; see also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011). Defendants' contention as to the fact that Bonner never engaged in a contractual relationship with them, but rather with a third party, can be easily addressed through discovery that would allow Plaintiff to fill-out any holes as to whether the individuals described in the Complaint had any professional or work relationship with Defendants. See García-Catalan v. United States, 734 F.3d 100, 105 (1st Cir. 2013) ("[I]t is reasonable to expect that modest discovery may provide the missing link") (citations and internal quotations marks omitted)).

After discovery, Defendants may renew its affirmative defenses and then the Court will address them. As Plaintiff argues, moving the case forward allows her to have "one bite at the apple" to litigate this matter. (Docket No. 19 ¶ 15).

Lastly, this Court reminds the parties that a complaint should not be "dismissed merely because [it] believes that the case is legally or factually doubtful or that it is unlikely that the plaintiff will prevail in the action on the merits." Twombly, 550 U.S. at 554.

Civil No. 19-1228 (GAG)

For the reasons abovementioned, this Court **DENIES** Defendants motions to dismiss at Docket Nos. 12 and 18 as to the lack of contractual relationship claim.

### a. Distinctness requirement and "enterprise" liability under RICO

As a threshold procedural matter, the Court notes that after Defendants filed their initial motion to dismiss (Docket No. 12), Plaintiff amended her Complaint to specifically address Defendants' argument as to the distinctness requirement under RICO (Docket No. 17). Triple-S Management and Vida renewed their motion to dismiss claiming that Plaintiff still failed to plead this requirement. (Docket No. 18).

Plaintiff then responded in opposition to Defendants first motion to dismiss (Docket No. 19); Defendants replied. (Docket No. 20). Later, Plaintiff responded to the supplemental motion to dismiss (Docket No. 21). The parties' position as to these issues remains the same throughout these motions.

In their submissions to the Court, Triple-S Management and Vida argue that Bonner "misunderstands the relationship between 'person' and 'enterprise' in the RICO statutory context." (Docket Nos. 12 at 9-10; 18 ¶ 4; 20 ¶ 4). According to Defendants' position, under RICO's Section 1962(c), "the 'person' is he who is employed by or associated with the 'enterprise' and conducts or participates in the conduct of the enterprise's affairs through a pattern of racketeering or collection of unlawful debt." (Docket No. 18 ¶ 4). Thus, they aver that Bonner has it "backwards" because if Plaintiff's allegations are taken as true, they "evince that the 'persons' who are conducting the 'enterprises' through a pattern of racketeering are the individuals she mentions as 'employees' [of Triple-S Management] and [Vida] and that the 'enterprises' these individuals allegedly conduct the affairs of are [Triple-S Management] and [Vida]." (Docket No. 20 ¶¶ 4-55). Finally, under this analysis, Defendants posit that an

9

**Civil No. 19-1228 (GAG)**

enterprise cannot be liable for the acts of the persons, pursuant to Schofield v. First Commodity Corp. of Boston, 793 F.2d 28 (1st Cir. 1986). (Docket Nos. 12 at 10; 18 ¶ 4).

In turn, Plaintiff contends that under the elements laid out in Libertad v. Welch, 53 F.3d 428 (1st Cir. 1995), she correctly identifies, for RICO statutory purposes, Triple-S Management and Vida as "persons" and the individuals, *e.g.* Gamboa Spencer, Zelaya, Ruiz Comas, Cera, Aponte and others, as the "enterprise" (Docket No. 19 ¶¶ 24-25). To further her contention, Bonner discusses Corporación Insular de Seguros v. Reyes-Muñoz, 826 F. Supp. 599 (D.P.R 1993), which, in her view, presents a similar procedural background to the present case. Id. ¶¶ 27-30. Finally, Bonner concludes that, similar to Corporación Insular de Seguros, she "did not sue both the corporations and the members of the enterprise, therefore, there is not issue of liability based on an enterprise." Id. ¶ 30.

The Court, once again, agrees with Plaintiff's position. RICO's Section 1962 (c) states that:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962. To state a civil RICO claim, a plaintiff must allege "four elements required by the statute: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003) (citations omitted) or "a single collection of an unlawful debt." United States v. Weiner, 3 F.3d 17, 24 (1st Cir.1993); see also Home Orthopedics Corp. v. Rodríguez, 781 F.3d 521, 528 (1st Cir. 2015).

A RICO "enterprise" is defined broadly and includes any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated

in fact although not a legal entity." 18 U.S.C. § 1961(4). Such an enterprise need not be a formal corporation, group or organization. Instead, the statute is satisfied by a showing a formal or informal group of persons, "associated for a common purpose of engaging in a course of conduct" which then functions as a "continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981). In other words, there are two possible types of RICO enterprises: legal entities and associations-in fact. Libertad, 53 F.3d at 44. See also Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R., Civil No. 15-1167 (JAG/SCC), 2015 WL 5719801, at *10 (D.P.R. 2015).

However, before the discovery stage, when assessing an "enterprise" *pleading* under RICO, what ultimately matters is that plaintiff can sufficiently establish "the existence of two distinct entities: (1) a 'person;' and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Inc. v. King, 533 U.S. 158, 161 (2001). The First Circuit has held that the so-called "distinctness or distinctiveness requirement" entails that:

> [T]he word "person," as used in the statute to describe one who "conducts" an "enterprise," does not apply to the enterprise itself. An "enterprise" does not "*conduct or participate . . . in the conduct of*" that same enterprise's affairs. Rather, only some "person" *other than* the "enterprise" can conduct or help conduct that enterprise's affairs. Hence the unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it.

Arzuaga-Collazo v. Oriental Fed. Sav. Bank, 913 F.2d 5, 6 (1st Cir. 1990) (emphasis in original).

After carefully reviewing Plaintiff's allegations, the Court finds that Plaintiff meets the distinctness requirement under RICO and has plausibly plead RICO civil violations pursuant to Section 1962(c) and the applicable case law. The statute requires that the "person" (i.e. Triple-S Management and Vida) engaged in racketeering be distinct from the "enterprise" (in this case,

Gamboa Spencer, Zelaya, Ruiz Comas, Cera, Aponte and others, which are *not a defendant*) whose activities they seek to conduct through racketeering. See Miranda v. Ponce Federal Bank, 948 F.2d 41, 44-45 (1st Cir. 1991) ("the same entity cannot do double duty as both the RICO defendant and the RICO enterprise"); see also Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 92 (1st Cir. 1995). In other words, Triple-S Management and Vida (the named defendants) cannot be the entities that conduct its own affairs through a pattern of racketeering activity. See Odishelidze v. Aetna Life & Cas Co., 853 F.2d 21, 23 (1st Cir. 1988).

Plaintiff explicitly makes a distinction in her Amended Complaint as to the role the "individuals" (which seem to fit the category of "association-in-fact enterprise") and "Triple-S Management and Vida" (the "persons") played in the alleged racketeering scheme and she was further cognizant *from the beginning* to not name these "individuals" as Defendants in the present case. (Docket Nos. 5; 17). The Court finds these allegations meet the RICO distinctness requirement at this stage of the proceedings.

After discovery, the Court may revisit this argument, if Defendants so request it during the summary judgment stage, given that the enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Ponce Fed. Bank, F.S.B. v. Ramiro Colon, Civil No. 92-1331 (DRD), 1996 WL 590274, at *17 (D.P.R. Sept. 26, 1996) (citing Libertad, 53 F.3d at 26).[2] Finally,

---

[2] The Court is also acquainted with the fact that:

> If the plaintiff chooses to identify the corporation as the enterprise through which its employees, as persons, conducted the RICO activity, the corporation is insulated from liability. It is for this reason that plaintiffs often try to prove the more intricate association-in-fact, in order to save as defendants all the corporate entities in the

**Civil No. 19-1228 (GAG)**

Defendants do not contest whether Plaintiff failed to plead the remaining elements required to establish civil RICO claims and hence, the Court need not address them.

Consequently, given that Bonner meets the RICO distinctness requirement, the Court also finds that she has sufficiently alleged the existence of defendants (Triple-S Management and Vida), whom could be found liable for racketeering activity. See 18 U.S.C. §1962(c) (establishing liability for "any person employed by or *associated with*" the enterprise) (emphasis added).

For these reasons, this Court **DENIES** Defendants motions to dismiss at Docket Nos. 12 and 18 as to their claims concerning the distinctness requirement and "enterprise" liability under RICO's section 1962 (c).

**IV.   Conclusion**

Accordingly, the Court holds that this case should proceed forward with discovery and thus, **DENIES** Defendants' motions to dismiss for failure to state a claim at Docket Nos. 12 and 18.

**SO ORDERED.**

In San Juan, Puerto Rico this 30th of March, 2020.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

scheme, often the deep pockets. The association-in-fact route, however, provides its own hazards.

Rodríguez v. Banco Cent., 777 F. Supp. 1043, 1054 (D.P.R. 1991) (citations omitted).